# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| **CHRISTOPHER RAYSHAWN RICHARDSON,**<br><br>    *Plaintiff,*<br><br>**v.**<br><br>**MACON-BIBB COUNTY,** *et al.,*<br><br>    *Defendants.* | **CIVIL ACTION NO.**<br>**5:20-cv-00322-TES** |

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, Christopher Rayshawn Richardson, brings six claims against

Defendants Macon-Bibb County, Macon-Bibb County Board of Commissioners, Sheriff

David Davis, and the Macon-Bibb Sheriff's Office. [Doc. 4, ¶ 2]. Specifically, Plaintiff

brings the following claims: "Negligence—Ordinary Care," "Violation of 42 U.S.C. §

1983," "Negligence—Reasonable Care," "Violation of Eighth Amendment," "Violation

of Fourteenth Amendment," and "Punitive Damages." [*Id.* at ¶¶ 25–74]. Plaintiff brings

these claims against Sheriff Davis in both his official and individual capacities. [*Id.* at ¶

2]. On January 31, 2022, Defendants Macon Bibb-County and the Macon-Bibb County

Board of Commissioners ("County Defendants") filed a Motion for Summary Judgment.

[Doc. 26]. Defendants Macon-Bibb County Sheriff's Office and Sheriff David Davis

("Sheriff's Office Defendants") also filed a Motion for Summary Judgment on the same day. [Doc. 27]. As detailed below, the Court **GRANTS** both Motions.

## <u>FACTUAL BACKGROUND</u>[1]

On August 16, 2019, Plaintiff injured his right hand after he punched a door. [Doc. 26-2, Richardson Depo., pp. 19:24—20:1]; [Doc. 26-2, p. 207]; [Doc. 31-1, ¶ 6]. That

---

[1] The Court needs to address three housekeeping items before getting to the meat of the order. First, a few of the parties' filings contained both depositions and exhibits in the same document. As such, the deposition transcript page numbers do not always match the ECF document page numbers. For clarity's sake, when the Court cites a deposition, it refers to the page number from the deposition transcript. However, when it cites an exhibit, it uses the ECF document number.

Next, the Court notes that there is another pending case in this court incredibly similar to this one: *Christopher Michael Richardson v. Sheriff David Davis, et al.*, 5:20-CV-00320-MTT. The Court concedes that "incredibly similar" may not accurately capture exactly how much alike these cases really are. For starters, the plaintiffs share the same first and last names. The same lawyers represent the plaintiffs and the defendants in both cases. And, believe it or not, these plaintiffs with virtually identical names not only shared adjoining cells, but they have sued the same parties for the same claims that resulted from similar injuries that were allegedly made worse in the same jail. That being said, counsel for both parties occasionally cite to materials not contained in the record for *this* case. With so many similarities, it makes sense that the lawyers in these two cases stipulated that the depositions of Sheriff David Davis and Captain Randy Gonzalez could be used in both this action and the similar action, 5:20-CV-00320-MTT. *See* [Doc. 30, Davis Depo., p. 5:12—19]; [Doc. 40-3, 5:20-cv-00320-MTT, Gonzales Depo., pp. 5:25—6:7]. However, both parties also cite to the deposition of Dr. John Sapp. *See* [Doc. 31, p. 6]; *see* [Doc. 27-1, p. 5]; *see also* [Doc. 40-4, 5:20-cv-00320-MTT, Sapp Depo.]. It is true, according to the medical records included with the Defendants' motions, that Dr. Sapp provided care to Plaintiff during his detainment. [Doc. 27-4, pp. 5, 6, 8, 77, 89, 122, 177, 213]. However, Dr. Sapp didn't testify about Plaintiff during his deposition— he testified about Christopher *Michael* Richardson. And, unlike Sheriff Davis' and Captain Gonzalez's deposition, the parties didn't stipulate to use Dr. Sapp's deposition for both cases. As such, the Court will consider Captain Gonzalez's deposition, even though the parties haven't introduced it to the record in this case; but, it will not consider Dr. Sapp's deposition.

Last, in their Statement of Material Facts, Defendants cite to material not in the record and Plaintiff cites to some of the same material in his Response to the Statement of Material facts. *See* [Doc. 27-3, ¶¶ 5, 9]; *see* [Doc. 31-1, ¶ 9]. According to this Court's Local Rules movants must support their factual contentions with "specific citation to particular parts of materials in the record" and nonmovants must controvert those facts "by specific citation to particular parts of materials in the record." LR 56, MDGa. The Court won't consider any factual assertion not supported by appropriate citation and will deem admitted any properly asserted fact not controverted by appropriate citation. *Id.* Accordingly, Court will *only* consider properly founded arguments supported by citation to material in this record. While the two cases at issue contain striking similarities, they are still separate cases, and the Court must treat them as such.

same day, Plaintiff visited Taylor Regional Hospital where ER doctors diagnosed him with a displaced right fourth metacarpal (right ring finger) shaft fracture and performed corrective surgery. [Doc. 26-2, p. 273]; [Doc. 31-1, ¶ 6]. Two days later, Pulaski County Sheriff's Office deputies arrested Plaintiff on outstanding warrants, forcefully handcuffed him behind his back, and transported him to the Bibb County Law Enforcement Center ("LEC"). [Doc. 26-2, Richardson Depo., p. 13:8–14]; [Doc. 31-1, ¶ 7].

Macon-Bibb County contracts with CorrectHealth Bibb, LLC ("CorrectHealth") to provide medical care to inmates and detainees at the Bibb LEC. [Doc. 27-2, ¶ 7]; [Doc. 31-1, ¶ 4]. Only CorrectHealth's employees or contractors provide medical care to inmates at the Bibb LEC. [Doc. 27-2, ¶ 8]; [Doc. 31-1, ¶ 4]. Generally, Bibb County Sheriff's Office personnel don't exercise any authority, supervision, or direction over any CorrectHealth providers, and they are not involved in any decision related to inmate medical care or the provision of health care to inmates. [Doc. 27-2, ¶ 9], [Doc. 31-1, ¶ 3]. Bibb County Sheriff's Office employees transport inmates and detainees to their medical appointments, but only CorrectHealth employees can schedule them, including appointments with outside providers. [Doc. 31-1, ¶ 5]. However, in rare circumstances, Bibb County Sheriff's Office personnel can cancel and request a rescheduling for medical appointments when they experience staffing shortages. [Doc. 30, Davis Depo., pp. 47:10—49:16].

On August 27, 2019, a little more than a week after arriving at the Bibb LEC, Plaintiff visited OrthoGeorgia regarding his fractured finger. [Doc. 31-1, ¶ 8]. Following this visit, a CorrectHealth employee noted that Plaintiff had "returned from outside appointment to have K wires of the right hand removed. [Plaintiff] was placed in a [3-finger] ulnar gutter cast. Paperwork states [Plaintiff] needs to be seen for [follow-up] in 7 days." [Doc. 26-2, p. 251]. The report also stated that Plaintiff's "fingers were pinned in non-ideal position" that would need surgical correction. [*Id.*]. Pursuant to OrthoGeorgia's directions, Plaintiff should have followed up on September 3, 2019. [Doc. 31-1, ¶ 8]. However, CorrectHealth records reflect they did not contact OrthoGeorgia to schedule a follow-up appointment until October 17, 2019. [Doc. 26-2, p. 251]; [Doc. 31-1, ¶ 8]. Plaintiff visited OrthoGeorgia six days later and scheduled a surgery for November 5, 2019.[2] [Doc. 26-2, p. 251]. Providers at OrthoGeorgia performed corrective surgery on Plaintiff's finger on November 5, 2019, and he returned to the infirmary at Bibb LEC. [*Id.*].

Plaintiff attended a follow-up appointment with Dr. Sapp at OrthoGeorgia two weeks after his surgery. [*Id.*]. OrthoGeorgia's therapy department contacted a CorrectHealth employee and directed them to schedule hand therapy twice a week for six weeks, as ordered by Dr. Sapp. [*Id.*]. The CorrectHealth employee noted they

---

[2] Plaintiff's CorrectHealth chart indicates that he scheduled surgery for 10/5/19. [Doc. 26-2, p. 251]. The Court notes that this entry clearly contains a typo, as a CorrectHealth employee entered it on November 1, 2019, and the correct date remains November 5, 2019.

scheduled the therapy appointments, a follow-up appointment with Dr. Sapp, and notified security. [*Id.* at pp. 251–52]. However, Plaintiff testified that he only attended one therapy session "for them to show me the exercises and stuff like that." [Doc. 26-2, Richardson Depo., p. 26:22–25]. During his confinement at the Bibb LEC, CorrectHealth medical staff examined and provided treatment to Plaintiff at least seven times, and they administered ibuprofen to him at least 109 times. [Doc. 31-1, ¶¶ 10–11].

The Sheriff's Office Defendants argued in their Statement of Material fact that during the relevant time period for this case, while acting in his official capacity as the elected sheriff of Bibb County, Sheriff Davis acted "as an arm of the State of Georgia; and in accordance with the duties imposed upon him and pursuant to the authority vested in him by the Georgia Constitution, Georgia statutes, and other applicable law." [Doc. 27-3, ¶ 1]; [Doc. 27-2, ¶ 3]. In his Response to the Statement of Material Facts, Plaintiff didn't dispute this assertion. [Doc. 31-1, ¶ 1]. As such, the Court deems it admitted. Sheriff Davis never encountered or interacted with Plaintiff, nor did he make any decision related to his medical treatment. [Doc. 27-2, ¶ 9]; [Doc. 31-1, ¶ 2]. Plaintiff filed this action on August 17, 2020. [Doc. 1].

## DISCUSSION

### A.    Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on

the evidence presented, "'a reasonable jury could return a verdict for the nonmoving

party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002)

(quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991));

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears

the initial responsibility of informing the court of the basis for its motion." *Four Parcels*,

941 F.2d at 1437. The movant may cite to particular parts of materials in the record,

including, "'the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any,' which it believes demonstrate the absence of a

genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)); Fed. R. Civ. P. 56(c)(1)(A).[3] "When the nonmoving party has the burden of proof

at trial, the moving party is not required to 'support its motion with affidavits or other

similar material negating the opponent's claim[]' in order to discharge this 'initial

responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323).

Rather, "the moving party simply may show—that is, point out to the district court—

that there is an absence of evidence to support the nonmoving party's case." *Four*

*Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively,

the movant may provide "affirmative evidence demonstrating that the nonmoving

---

[3] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P.
56(c)(3).

party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails to address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for the purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

Stated differently, "the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for

trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and

all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable

jury could make more than one inference from the facts, and one of those permissible

inferences creates a genuine issue of material fact, a court cannot grant summary

judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at

1263.

**B.**     **County Defendants' Motion for Summary Judgment**

        The County Defendants filed their summary judgment motion on January 31,

2022. [Doc. 26]. They argue that the claims brought against the Macon-Bibb County

Board of Commissioners pursuant to 42 U.S.C. § 1983 were duplicative in nature and

should be dismissed. [Doc. 26-4, p. 5].

        Next, they argue that no underlying constitutional violation exists in this matter,

but even if one did, they cannot face liability as a matter of law. [*Id.* at p. 6]. First, the

County Defendants point out that Plaintiff "failed to allege or assert any policy of the

County or the Commissioners" that resulted in a constitutional violation, and as a

result, his claims fail as a matter of law. [*Id.*]. Second, they argue that both Eleventh

Circuit and Georgia legal precedent clearly establishes that sheriffs act as arms of the

state and the unlawful actions of sheriffs cannot serve as the basis for county liability. [*Id.* at pp. 6–7 (first quoting *Manders v. Lee*, 338 F.3d 1304, 1308–09 (11th Cir. 2003) and then quoting *Brown v. Jackson*, 470 S.E.2d 786, 787 (Ga. Ct. App. 1996))].

Third, they argue that the state law claims must be dismissed as sovereign immunity shields them from suit. [Doc. 26-4, p. 9]. Relatedly, they argue that official immunity also bars any state law claims brought against the individual County Commissioners. [Doc. 26-4, p. 10]. Last, the County Defendants argue that Plaintiff's claim for punitive damages against the county fails because the Georgia Constitution prohibits such a claim, and similarly argue that Plaintiff's claim for punitive damages against the Commissioners fail because the rest of Plaintiff's substantive claims fail to survive summary judgment. [Doc. 26-4, p. 11].

In his Response, Plaintiff "acknowledge[d] that Macon-Bibb County and Macon-Bibb County Board of Commissioners are not proper Defendants to this suit." [Doc. 32, p. 1]. As such, Plaintiff promised "[a] Motion to Remove Defendants Macon-Bibb County and Macon-Bibb County Board of Commissioners will be filed soon." [*Id.*]. But, he never filed the motion. Regardless, the Court considers this an abandonment of his claims against those Defendants because Plaintiff not only failed to address the substance of the County Defendant's Motion for Summary Judgment, but he also expressly recognized the merits of their Motion and conceded its accuracy. *See Ekokotu v. Fed. Exp. Corp.*, 523 F. App'x 629, 632 (11th Cir. 2013) ("First, the court correctly held

that Ekokotu abandoned the claims because he not only failed to argue them in response to FedEx's motion for summary judgment, but he explicitly and unequivocally disavowed them in response to FedEx's motion for summary judgment.").

Furthermore, after reviewing the County Defendants' arguments and relevant controlling case law, the Court agrees with the validity of their various immunity arguments and finds they are entitled to summary judgment.

Consequently, the Court **GRANTS** their Motion for Summary Judgment [Doc. 26] and all claims against Defendants Macon-Bibb County and the Macon-Bibb County Board of Commissioners are **DISMISSED**.

C.   <u>**Sheriff's Office Defendants' Motion for Summary Judgment**</u>

Plaintiff brings six different claims against both the Bibb County Sheriff's Office and Sheriff David Davis—both in his official and individual capacities. As the Court details below, Plaintiff abandoned all claims against these Defendants other than his claim of deliberate indifference to provide medical care in violation of 42 U.S.C. § 1983 based on Sheriff Davis' supervisory role.[4] And, Plaintiff fails to survive summary judgment on his claim of deliberate indifference.

---

[4] Conspicuously missing from Plaintiff's Complaint is a count titled "Deliberate Indifference." However, for the sake of clear analysis, the Court consolidates Plaintiff's "Violation of 42 U.S.C. § 1983," "Violation of Eighth Amendment," and "Violation of Fourteenth Amendment" claims that make up the substance of the deliberate indifference allegations.

1.      **Plaintiff's Abandoned Claims**

Plaintiff brings six distinct claims against both the Bibb County Sheriff's Office and Sheriff David Davis—two counts of negligence, one for a breach of ordinary care and one for a breach of reasonable care; one count of a violation of 42 U.S.C. § 1983; one count of a violation of the Eighth Amendment; one count of a violation of the Fourteenth Amendment; and last, a count requesting punitive damages. *See* [Doc. 4]. In their Motion for Summary Judgment, the Sheriff's Office Defendants argue that Georgia law doesn't permit suit against the Bibb County Sheriff's Office in federal court because it isn't an entity capable of being sued. [Doc. 27-1, p. 7]. Further, the Sheriff's Office Defendants argued that Eleventh Amendment immunity, sovereign immunity, and qualified immunity bar any claims against Sheriff Davis in both his official and individual capacities. [*Id.* at pp. 8–12]. Next, they argue that a claim brought against Sheriff Davis based on supervisory liability fails as a matter of law. [*Id.* at pp. 13–14]. Last, they argue that Plaintiff's claim for punitive damages should fail because the underlying claims remain meritless. [*Id.* at p. 14].

In his Response, Plaintiff only makes two arguments: (1) the Bibb County Sheriff's Office acted with deliberate indifference to his serious medical needs, and (2) qualified immunity doesn't protect Sheriff Davis because he remains liable as a supervisor for the unconstitutional violations of his subordinates, and alternatively, he

faces liability for failing to properly train and supervise his deputies. [Doc. 31, pp. 3, 6, 10].

As described above, Plaintiff failed to address whether the Bibb County Sheriff's Office is an entity capable of being sued in federal court, whether Eleventh Amendment immunity and sovereign immunity prohibits suit against Sheriff David Davis in his official capacity, or the issue of the availability of punitive damages. Further, Plaintiff's conclusory attempt to argue that "representatives of the Bibb County Sheriff's Office acted with deliberate indifference to [his] medical needs" does not address these particular arguments, even tangentially. [Doc. 31, p. 3].

Once again, because Plaintiff failed to address these arguments in his Response, he indicates his agreement with them and abandons any argument or objection he may have against them. *See State Farm Mut. Auto. Ins. Co. v. Robert Eugene Marshall*, 175 F.Supp.3d 1377, 1385 (S.D. Ga. 2016) (quoting *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014)). Moreover, after a review of the arguments and the relevant controlling case law, the Court agrees with Defendants. Consequently, the Court **GRANTS** summary judgment to the Bibb County Sheriff's Office on all claims, **DISMISSING** it as a defendant. Further, the Court **GRANTS** summary judgment on all claims brought against Sheriff Davis in his official capacity and **DISMISSES** Plaintiff's claim for punitive damages.

### 2.    Plaintiff's Remaining Claims

Now, the Court must address Plaintiff's remaining claims against Sheriff Davis in his individual capacity: (1) alleged deliberate indifference to his serious medical needs, (2) alleged failure-to-train to train his subordinates, and (3) alleged failure-to-supervise his subordinates.

The Court starts with Plaintiff's claim of deliberate indifference and then turns to whether qualified immunity shields Sheriff Davis from suit.[5] Last, the Court addresses the failure-to-train and failure-to-supervise claims together as the same analysis will apply to both.

#### a.    *Plaintiff Fails to Provide Evidence Showing an Underlying Violation*

The Court first analyzes whether Sheriff Davis personally acted with deliberate indifference to Plaintiff's medical needs. To survive a motion for summary judgment, a plaintiff alleging deliberate indifference to provide medical treatment in violation of the Fourteenth Amendment  "must 'produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3)

---

[5] Plaintiff initially brought a claim of deliberate indifference directly against Sheriff Davis in his individual capacity, as well as in his role as supervisor. However, in his Response, Plaintiff changes the focus of his claim, casting a much wider net asserting "[g]enerally speaking, representatives of the Bibb County Sheriff's Office acted with deliberate indifference." [Doc. 31, p. 3]. Even though Plaintiff possibly abandoned his direct claim of deliberate indifference against Sheriff Davis, the Court addresses the merits of that claim as it sheds light on Plaintiff's other claims.

causation.'"[6] *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)). "Stating a[] [Fourteenth]

Amendment Claim of denial of adequate medical care requires satisfying both an

objective and subjective component." *Gifford v. Rathman*, No. 1:14-CV-1179-SLB-JEO,

2017 WL 4340454, at *19 (N.D. Ala. Sept. 29, 2017) (citing *Hervy v. McDonough*, No.

5:07cv58/RS/EMT, 2007 WL 1482392, at *3–4 (N.D. Fla. May 18, 2007)).

With respect to the subjective element of deliberate indifference, Plaintiff must

prove: (1) Sheriff Davis had subjective knowledge of the risk of a serious harm; (2)

Sheriff Davis disregarded that risk; and (3) Sheriff Davis' conduct amounts to more than

gross negligence. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013)

(quoting *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). "[A]n

inadvertent failure to provide adequate medical care cannot be said to constitute 'an

unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of

mankind.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Liability will only stand against a

prison official if they "know[] of and disregard[] an excessive risk to inmate health or

safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

---

[6] Plaintiff alleges Defendants violated both his Eighth and Fourteenth Amendment rights. [Doc. 4, ¶¶ 50–66]. However, as a pretrial detainee, the Fourteenth Amendment, not the Eighth Amendment, governs his claim of deliberate indifference, although courts analyze both claims under an identical standard. *See Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1188 (11th Cir. 2020) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)). Accordingly, the Court refers to the Fourteenth Amendment in this order as opposed to the Eighth Amendment.

To show that a prison official possesses such knowledge, he "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (internal citations omitted).

Plaintiff argues "[b]y failing to transport [him] to his initial follow-up with OrthoGeorgia and to his physical therapy sessions, the *Macon-Bibb County Sheriff Deputies* posed a substantial risk of serious harm to Mr. Richardson's mobility in his hand." [Doc. 31, p. 6 (emphasis added)]. He further argues "[he] clearly had a serious medical need, and by failing to ensure that Mr. Richardson got the medical attention that he needed, and that was later ordered by a physician, *Defendants* should be liable for their deliberate indifference to [his] medical needs." [*Id.* (emphasis added)].

Plaintiff effectively argues that the need for corrective surgery on the non-ideally pinned fingers and then the subsequent need for physical therapy created a serious medical issue sufficient to trigger the protections of the Fourteenth Amendment. The Court isn't convinced.

First, Plaintiff doesn't provide evidence establishing that his corrective surgery constituted a serious medical need. Plaintiff's CorrectHealth chart indicates that the

doctor he met at his first appointment with OrthoGeorgia requested a follow-up appointment in seven days in order to schedule a corrective surgery. [Doc. 27-4, p. 176]. This suggests that his doctor did not see a reason to operate on his hand for at least more than a week. And, Plaintiff doesn't dispute that Dr. Sapp operated on his hand on November 5, 2019. Finally, the Court notes that the record in this case contains absolutely no medical evidence showing that any delay in surgery or missed physical therapy appointments caused Plaintiff any harm whatsoever. As such, the Court can't definitively say this non-emergency situation constitutes a serious medical need for Fourteenth Amendment purposes.

Likewise, Plaintiff doesn't establish that physical therapy appointments constitute a serious medical need. Plaintiff cites to Dr. Sapp's deposition to support the contention that he would lose mobility in his hand if he didn't attend physical therapy sessions. However, as the Court previously explained, this deposition focused on Christopher *Michael* Richardson, not our Plaintiff, and it's not even in our record. *See* n.1, *supra*. Thus, Plaintiff has failed to properly support this factual assertion and the Court cannot consider it. *See* Fed. R. Civ. P. 56(c)(1).

Without any medical evidence to support his arguments, any attempt to create a genuine issue of material fact on the issue necessarily fails as well. While it is certainly true that an unreasonable delay of medical care can constitute deliberate indifference, it's up to the Plaintiff to "place verifying medical evidence in the record to establish the

detrimental effect of delay in medical treatment to succeed." *Jacoby v. Baldwin Cnty.*, 596 F. App'x 757, 766–67 (1th Cir. 2014). Plaintiff simply hasn't provided any verifying medical evidence suggesting the delay in his surgery and physical therapy sessions caused him any detriment. The record only provides that "[p]aper work [sic] states that fingers were pinned in non-ideal position. Paperwork suggest [sic] needs [sic] to surgically corrected [sic]." [Doc. 27-4, p. 176]. This evidence simply doesn't meet the standard required to support a constitutional violation.

Even assuming that Plaintiff had established he suffered from a serious medical need, he fails to provide any evidence establishing the personal involvement of Sheriff Davis. In fact, Plaintiff concedes that Sheriff Davis never met him and never involved himself with any aspect of Plaintiff's medical care. [Doc. 31-1, ¶ 2]. Instead, Plaintiff only responds that "Macon-Bibb County *Sheriff Deputies* posed a substantial risk of serious harm" to his medical needs. [Doc. 31, p. 6 (emphasis added)]. But, Plaintiff didn't sue any deputies in this action—he sued the Sheriff. As such, he failed to prove that Sheriff Davis even knew him, let alone that he knew about his injury and the potential risks he faced and then deliberately ignored them. Consequently, no direct claim of deliberate indifference can stand against Sheriff Davis.

In fact, Plaintiff can't prove a direct claim of deliberate indifference against *anyone*. His vague assertion that some unidentified "sheriff deputies" caused a violation of his rights doesn't identify anyone with subjective knowledge of his allegedly serious

medical need. Plaintiff fails to provide any evidence whatsoever—other than an obscure policy, discussed below—that suggests any deputy who worked at the Bibb LEC ever cancelled his appointment and failed to ask CorrectHealth to reschedule it. And, that evidence alone won't survive a summary judgment motion unless it proved that the person who cancelled his therapy appointments knew of his broken hand, knew that delaying appointments would cause him harm and that he or she delayed them anyway. Because Plaintiff simply doesn't provide such evidence, any direct claim of deliberate indifference fails.

Moreover, not only does Plaintiff's direct claim fail, but so does any indirect claim. Because supervisors are not subject to normal respondeat superior or vicarious liability under § 1983, Plaintiff can only hold Sheriff Davis liable if he "show[s] that the supervisor either directly participated in the *unconstitutional conduct* or that a causal connection exists between the supervisor's actions and the *alleged constitutional violation*." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (citations omitted) (emphasis added). Accordingly, if no one violated the Constitution, then no one can be liable, regardless of the theory.

As explained above, Plaintiff hasn't provided *any* evidence of a constitutional violation. Thus, it becomes rather obvious that no action or policy of Sheriff Davis could have caused a constitutional violation to occur. Without any causal connection to a constitutional violation, Sheriff Davis can't face liability for his role as a supervisor.

For the sake of thoroughness, the Court also finds that qualified immunity shields Sheriff Davis from this claim. Sheriff Davis cannot receive qualified immunity unless he can prove he acted "within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (quoting *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009)). And, Plaintiff doesn't contest this point. Next, courts must grant qualified immunity to an official unless a plaintiff can demonstrate two things: "first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Again, for the reasons shown above, Plaintiff has failed to show that Sheriff Davis violated any of Plaintiff's constitutional rights. And, without any evidence of an underlying constitutional violation, the Court must find that qualified immunity attaches to Sheriff Davis and shields him from suit. Consequently, the Court **DISMISSES** Plaintiff's sole remaining claim of deliberate indifference brought against Sheriff Davis in his individual capacity.

b.     *Plaintiff Cannot Bring New Claims in his Response*

Finally, Plaintiff argues that Sheriff Davis should face liability for failing to properly train and supervise his deputies. However, Plaintiff attempts to assert these allegations as independent claims for the first time. *See* [Doc. 4]. While Plaintiff did

claim that "Sheriff David Davis . . . negligently failed to properly train and supervise [his] employees," he only passingly did so in the facts section of his Complaint. He never mentioned a lack of supervision or training in any of the counts alleged in his Complaint. [Doc. 4, ¶ 15]. "Failure-to-train and failure-to-supervise are separate claims" under § 1983. *Massey v. Dorning*, 2020 WL 607573, at *11 (N.D. Ala. Feb. 7, 2020) (first citing *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) and then citing *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1175 (11th Cir. 2001)).[7] As such, to properly put Defendants on notice of these claims, Plaintiff should have brought them as independent counts in his Complaint.

Plaintiffs cannot amend their complaints through argument in a brief opposing summary judgment, and instead must comply with the dictates of Federal Rule of Civil Procedure 15. *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). Plaintiff could have tried to bring these failure to train and supervise claims independently in his Complaint. Instead, he waited to argue them for the first time in his Response. Because Plaintiff failed to amend his complaint as provided by Federal Rule of Civil Procedure 15 to include them as independent counts, the Court finds that he cannot do so now. Any claim that Sheriff Davis failed to train or supervise his deputies is **DISMISSED**.

---

[7] *Thomas ex rel. Thomas* was vacated in *Thomas v. Roberts*, 536 U.S. 953 (2002), and then reinstated in full in *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950 (11th Cir. 2003).

## <u>CONCLUSION</u>

Based on the foregoing, the Court **GRANTS** the County Defendants' Motion for

Summary Judgment [Doc. 26] and **GRANTS** the Sheriff's Office Defendants' Motion for

Summary Judgment [Doc. 27], and **DISMISSES** all claims brought against these

Defendants. The Court **DIRECTS** the Clerk of Court to enter **JUDGMENT** accordingly.

**SO ORDERED**, this 28th day of June, 2022.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**